**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **SCIREGS INTERNATIONAL, INC.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: DLB-21-2270** |
| **IDENTI PHARMACEUTICALS, LLC,** ***et al.*,** | * | |
| | * | |
| **Defendants.** | | |
| | * | |

**MEMORANDUM OPINION**

SciRegs International, Inc. ("SciRegs") alleges that Identi Pharmaceuticals, LLC ("Identi"), IdentiRx, LLC ("IdentiRx"), Flatwing Pharmaceuticals, LLC ("Flatwing"), and Estreno Pharmaceuticals, LLC ("Estreno") failed to pay for consulting services rendered by SciRegs and that Rajneesh Kumar Ahuja, a member of the companies, intentionally misrepresented his intention to pay for those services. ECF 1-1. SciRegs asserts claims of breach of contract and unjust enrichment against the companies and a claim of intentional misrepresentation against Ahuja. *Id.* ¶¶ 23–53. Defendants moved to dismiss the complaint. ECF 10. The motion is fully briefed. ECF 12, 13. No hearing is necessary. Loc. R. 105.6 (D. Md. 2021). For the reasons set forth herein, defendants' motion is granted in part and denied in part.

**I.     Background**

Plaintiff SciRegs is a Maryland corporation with its principal place of business in Howard County, Maryland. ECF 1-1, ¶ 3. Defendants Identi, IdentiRx, Flatwing, and Estreno are each Delaware limited liability companies that transact business in Howard County, Maryland, and with the Food and Drug Administration ("FDA") in Montgomery County, Maryland. *Id.* ¶¶ 3–7. Ahuja is a resident of Florida and either a member or managing member of the four defendant-companies

as well as a non-party called "Chandra V." *Id.* ¶ 8.  According to SciRegs, Ahuja transacts business with the FDA and others in Maryland.  *Id.*

The claims in this case arise from services rendered by SciRegs to Identi, IdentiRx, Flatwing, and Estreno.  SciRegs entered into written agreements with Flatwing in March 2018 ("Flatwing Agreement") and Identi in August 2018 ("Identi Agreement") to provide them "consulting services" and to "act as [a] regulatory affairs agent" for them "in connection with [their] effort[s] to seek approval from the [FDA] for the manufacture and sale of certain pharmaceutical drugs." *Id.* ¶¶ 10, 16.  SciRegs does not allege that it entered into written agreements with IdentiRx or Estreno, but it claims it provided services to IdentiRx under the Identi Agreement and to Estreno under the Flatwing Agreement "pursuant to . . . Ahuja's request and direction." *Id.* ¶¶ 11, 17.  SciRegs also alleges it provided services to "other affiliated entities," but it identifies only Chandra V, a non-party.  *Id.* ¶¶ 11, 16, 47; *see* ECF 1-1.  SciRegs began rendering services under the Identi Agreement in January 2020 and under the Flatwing Agreement in February 2020, and it ceased to provide all services at the end of September 2020.  ECF 1-1, ¶¶ 12, 18.

On a monthly basis, SciRegs invoiced Ahuja for the services rendered to the defendant-companies, and payment was due upon receipt of the invoices.  *Id.* ¶¶ 13, 19.  For services stemming from the Identi Agreement, SciRegs allegedly is owed $188,312.50.  *Id.* ¶ 14.  For services under the Flatwing Agreement, SciRegs allegedly is owed $54,637.50.  *Id.* ¶ 20.  Despite written demands for payment for those services, the defendants have not paid SciRegs anything. *Id.* ¶¶ 15, 21.  SciRegs alleges that Identi and IdentiRx breached the Identi Agreement and that Flatwing and Estreno breached the Flatwing Agreement by accepting its services but refusing to pay for them.  *Id.* ¶¶ 26, 40.  SciRegs did not attach either agreement to its complaint, but it alleges

that, "[p]ursuant to the express terms of the Identi Agreement, a party who prevails in a legal action or proceeding to enforce any provision of the agreement is entitled to recover costs and expense[s], including reasonable attorney[s'] fees." *Id.* ¶ 22.  SciRegs makes no mention of the express terms of the Flatwing Agreement.

SciRegs alternatively alleges that the defendant-companies were unjustly enriched because SciRegs rendered services at their request or at Ahuja's "request and direction" but never received payment.  *Id.* ¶¶ 30–34, 42–47.  It also alleges Flatwing and Estreno have been unjustly enriched by services rendered to Chandra V for which SciRegs was not paid.  *Id.* ¶ 47.  The relationship between Flatwing and Estreno, on the one hand, and Chandra V, on the other, is unclear from the face of the complaint.

SciRegs also alleges Ahuja committed fraud.  It claims that "Ahuja, acting on behalf of Identi, IdentiR[x], Flatwing[,] and Estreno, intentionally and with the intent to deceive SciRegs solicited and requested that SciRegs provide consulting services to each of these entities with no intention of paying for the services provided."  *Id.* ¶ 49.  "In connection with providing the consultation services to Identi, IdentiR[x], Flatwing[,] and Estreno as solicited and requested by [d]efendant Ahuja, SciRegs believed that [d]efendant Ahuja, and these entities, intended to pay SciRegs for the services provided."  *Id.* ¶ 50.  "Moreover, [d]efendant Ahuja knew that SciRegs was working in good faith with the belief that they would be paid for the services provided and at no time requested SciRegs to stop providing the services for which SciRegs now seeks to recover payment."  *Id.* ¶ 51.  "As a result of [d]efendant Ahuja's deceit, SciRegs has suffered damages, including but not necessarily limited to, the non-payment for the services provided totaling $242,950.00."  *Id.* ¶ 52.  SciRegs seeks punitive damages because of the alleged fraud.  *Id.* ¶ 53.

Defendants move to dismiss the complaint under Rule 12(b)(6) for failure to state a claim and move to dismiss the fraud claim against Ahuja under Rule 12(b)(2) for lack of personal jurisdiction.

## II.     Standards of Review

A Rule 12(b)(6) motion to dismiss for failure to state a claim "tests the legal sufficiency of a complaint" and "should be granted unless the complaint 'states a plausible claim for relief.'" *In re Birmingham*, 846 F.3d 88, 92 (4th Cir.), *as amended* (Jan. 20, 2017) (quoting *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012)); *see* Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the "complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).  Stated differently, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2)).  When resolving a Rule 12(b)(6) motion to dismiss, the Court accepts the well-pleaded allegations as true.  *See Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  *Ray*, 948 F.3d at 226 (quoting *Tobey*, 706 F.3d at 387).

"Under Rule 12(b)(2), a defendant 'must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge.'"  *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (quoting *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)).  "When a district court decides personal jurisdiction without an evidentiary hearing, the plaintiff need only show a prima facie case of personal jurisdiction."  *Wallace v. Yamaha Motors Corp., USA*, No. 19-2459, 2022

4

WL 61430, at *1 (4th Cir. Jan. 6, 2022). "This '*prima facie* case' analysis resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). Unlike when deciding a Rule 12(b)(6) motion, however, a court deciding a Rule 12(b)(2) motion may consider "affidavits and exhibits" beyond the scope of the complaint "in order to assure itself of personal jurisdiction." *UMG Recordings*, 963 F.3d at 350 (citing *Grayson*, 816 F.3d at 269). "A court must also 'construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inference for the existence of jurisdiction." *Id.* (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

## III.   Discussion

### A.   Breach of Contract

Defendants argue SciRegs has not alleged a breach of contract claim. "[I]n order to state a claim for breach of contract, a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by defendant." *RRC Northeast, LLC v. BAA Md., Inc.*, 994 A.2d 430, 442 (Md. 2010) (citing *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)). A plaintiff also "'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012) (quoting *Cont'l Masonry Co. v. Verdel Const. Co.*, 369 A.2d 556, 569 (1977)).

As to defendants Identi and Flatwing, SciRegs has stated claims for breach of contract. SciRegs identifies two written agreements it executed in March and August of 2018 with Flatwing and Identi, respectively. SciRegs alleges that, under the agreements, it agreed to provide consulting services to Identi and Flatwing in connection with their attempts to seek FDA approval

of certain pharmaceutical products.  SciRegs further alleges that it provided the services, that it

invoiced Identi and Flatwing for the services, that payment for services was due upon receipt, and

that the companies materially breached the contracts by failing to pay $242,950.00 due under them.

While it is true, as defendant argues, that SciRegs did not attach the agreements to the complaint

or describe the nature, duration, and frequency of the consulting services, the complaint contains

allegations of the existence of a contractual obligation owed by Identi and Flatwing to SciRegs

and a material breach of that obligation.  These allegations sufficiently allege a breach of contract

claim against Identi and Flatwing.[1]

As to the other two defendant-companies, IdentiRx and Estreno, SciRegs does not allege

they were signatories to any contract.  "Normally a person cannot be held liable under a contract

to which he was not a party."  *Snider Brothers, Inc. v. Heft*, 317 A.2d 848, 851 (Md. 1974).

"However, a person not originally a party to a contract may later accept or adopt it, and he will

then be bound by it."  *Id.*  "Acceptance can . . . 'be accomplished by acts as well as words.'"  *Dev.*

*Design Grp., Inc. v. Deller*, No. CCB-10-53, 2012 WL 1098603, at *28 (D. Md. Mar. 30, 2012)

(quoting *Porter v. Gen. Boiler Casing Co.*, 396 A.2d 1090, 1094 (Md. 1979)).

SciRegs does not allege IdentiRx and Estreno accepted or adopted either contract.  Rather,

it alleges that it provided services to IdentiRx and Estreno "pursuant" to the agreements and at the

direction of Ahuja.  These allegations are a far cry from instances in which courts have found non-

---

[1] Defendants also argue the contract claims against Identi and Flatwing fail as pled because
contracts must contain the nature and extent of the parties' obligations and the essential terms of
the agreement and SciRegs has not pled either.  In support of their argument, they cite *County
Commissioners for Carroll County v. Forty West Builders, Inc.*, 941 A.2d 1181, 1209 (Md. Ct.
Spec. App. 2008); *Canaras v. Lift Truck Services, Inc.*, 322 A.2d 866, 871 (Md. 1974); and
*Mogavero v. Silverstein*, 790 A.2d 43, 50–51 (Md. Ct. Spec. App. 2002).  While these cases do
hold that, to be enforceable, a contract must express with certainty the essential terms and the
parties' obligations, they do not hold that a plaintiff must, at the pleading stage, allege all essential
contractual terms to state a claim for breach of contract.

signatories adopted the terms of a contract.  In *Snider Brothers*, for example, the Maryland Court of Appeals found a lessor adopted the terms of a previously executed contract between other lessors and the plaintiff, a broker.  317 A.2d at 852.  The non-party lessor signed a subsequent contract adopting the terms of the original contract and was accordingly bound to perform as the original contract required.  *Id*.  In *Duplex Envelope Co. v. Baltimore Post Co.*, a purchaser that sent a signed contract to a supplier received the supplier's counteroffer, which contained a modification to the price terms, but the purchaser did not sign the counteroffer.  163 A. 688, 691–92 (Md. 1933).  The purchaser subsequently received, accepted, and used the goods the supplier shipped it, and the court determined the purchaser had agreed to be bound by the terms of the counteroffer through its actions.  *Id*.  SciRegs does not make allegations similar to the facts in *Snider* or *Duplex* from which the Court could plausibly infer that non-signatories IdentiRx and Estreno accepted or adopted the written agreements.

The breach of contract claims against IdentiRx and Estreno are dismissed without prejudice.

### B.  Unjust Enrichment

SciRegs asserts unjust enrichment claims against Identi, IdentiRx, Flatwing, and Estreno. To establish a claim of unjust enrichment, a plaintiff must show (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.  *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007) (citing *Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000)).  Defendants do not argue SciRegs has failed to plead the elements of unjust enrichment.  Rather, they argue that SciRegs cannot bring unjust enrichment claims

against any of the defendant-companies because the contracts with Identi and Flatwing preclude recovery under a theory of unjust enrichment.  SciRegs argues the unjust enrichment claims are brought in the alternative to the breach of contract claims.

"[G]enerally, quasi-contract claims such as . . . unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists."  *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 609 (Md. 2000).  But "a plaintiff is not barred from pleading" breach of contract and unjust enrichment "in the alternative where the existence of a contract concerning the subject matter is in dispute."  *Transam. Premier Life Ins. Co. v. Selman & Co.*, 401 F. Supp. 3d 576, 598 (D. Md. 2019) (quoting *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 678 (D. Md. 2013)).

The Fourth Circuit's recent decision in *Martz v. Day Dev. Co.*, --- F.4th ----, 2022 WL 1634856, at *5–6 (4th Cir. May 24, 2022) provides guidance.  In *Martz*, the Fourth Circuit affirmed this Court's award of restitution after a bench trial under a theory of unjust enrichment even though the Court found, at summary judgment, that the defendant had breached the governing contract. *Id.* at *1.  The parties, a consultant and property developer—the latter purchased land from the former—executed a contract that contemplated compensation to the consultant if the developer sold or developed the property.  *Id.* at *1–2.  The contract further provided that the compensation was payable upon sale, receipt of building permits, or "January 1, 2015, whichever was the *earliest*."  *Id.* at *2 (emphasis in original).  The developer neither sold nor developed the property. *Id.*  Martz, the consultant, performed all required duties under the contract, but the developer refused to pay, and Martz brought suit after January 1, 2015.  *Id.*  The Court found the developer breached the contract and awarded restitution under a theory of unjust enrichment because the contract did not provide for a calculation of damages in the event the property was neither sold nor

developed. *Id.* at *1.  The Fourth Circuit affirmed and rejected the developer's argument that Martz could not recover under a theory of unjust enrichment because their relationship was governed by an enforceable contract. *Id.* at *5–6.  The Court noted the general rule in Maryland that a plaintiff may not recover under an unjust enrichment theory where a contract governs the transaction at issue. *Id.* at *6.  The Court then observed that the case before it fell within an exception to that rule "allowing restitution for unjust enrichment 'when the express contract does not fully address a subject matter.'" *Id.* (quoting *Janusz v. Gilliam*, 947 A.2d 560, 567–68 (Md. 2008).  Affirming the restitution award for unjust enrichment, the Fourth Circuit reasoned the contract "failed to address how Martz was to be compensated" if the developer did not sell or develop the property, and this contractual "gap . . . would unjustly enrich [the developer], which received the benefit of Martz's services." *Id.*

At this stage in the case, dismissal of the unjust enrichment claims is not warranted because the Court cannot determine conclusively that the contracts fully address the matters at issue. SciRegs did not attach the agreements to the complaint, and the defendants do not concede the existence of enforceable contracts covering the entirety of the subject matter of the claims against them.  Dismissing the unjust enrichment claims now, therefore, would be "premature" even though SciRegs may "not ultimately be able to recover both contractual and quasi-contractual remedies." *See Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 688 (D. Md. 2010) (citing *RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 666 (D. Md. 2009)); *Clark v. Bank of Am., N.A.*, No. SAG-18-3672, 2020 WL 902457, at *9 (D. Md. Feb. 24, 2020) (declining to dismiss an unjust enrichment claim where the defendant contested the effect of an alleged contract between the two parties); *Transam. Premier Life Ins. Co.*, 401 F. Supp. 3d at 598 (permitting unjust enrichment claim pled in the alternative to breach of contract because "it would be premature for

the Court to conclude, prior to discovery" that either of the alleged contracts would "necessarily govern the subject matter at issue"); *Havtech, LLC v. Allegheny Eng'g Co.*, No. GJH-18-1139, 2018 WL 6423893, at *3–4 (D. Md. Dec. 4, 2018) (denying a motion to dismiss an unjust enrichment claim because the plaintiff could fail to prove the existence of a contract at subsequent stages of the litigation but still be entitled to recover under a quasi-contractual remedy).

The motion to dismiss the unjust enrichment claims is denied.

### C. Fraud Claim Against Ahuja

SciRegs asserts a claim for intentional misrepresentation against Ahuja in his personal capacity. Defendants argue SciRegs has failed to plead sufficient facts to make the prima facie case for this Court's personal jurisdiction over Ahuja. The Court agrees.[2]

The Court may have general or specific personal jurisdiction over a defendant. A plaintiff may establish general personal jurisdiction when a defendant has "activities in the state [that are] 'continuous and systematic'" and unrelated to "the defendant's contacts with the state [that] are . . . the basis for the suit." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). Alternatively, a plaintiff may establish specific personal jurisdiction based on "the defendant's contacts with the forum state [that] also provide the basis for the suit." *Id.* Here, there are no allegations that Ahuja had any contact with Maryland other than the conduct underlying plaintiff's allegations. Therefore, the question is whether the Court has specific personal jurisdiction over Ahuja.

---

[2] Defendants also argue the fraud allegations fall short of Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. Because SciRegs has not met its burden to plead personal jurisdiction over Ahuja, the Court need not reach the Rule 9(b) question.

Determining whether this Court has specific personal jurisdiction over Ahuja involves a two-step inquiry. The Court must first determine if "such jurisdiction is authorized by the long-arm statute of the state in which the district court sits." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). The Court must then decide whether "application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Id.*; *Dev. Design Grp.*, 2012 WL 109863, at *13 (citing *Carefirst*, 334 F.3d at 396; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980)). The Due Process Clause requires "'minimum contacts' with the forum so that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020) (quoting *Hawkins*, 935 F.3d at 228 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))).

Maryland's long-arm statute provides for "personal jurisdiction over a person, who directly or by an agent . . . [c]auses tortious injury in the State by an act or omission in the state." Md. Code Ann., Cts. & Jud. Proc. § 6–(b)(3). "[T]he reach of the [long-arm] statute is as far as due process permits." *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 492 n.5 (Md. 2006). The two-step test thus merges, and the Court considers whether exercising personal jurisdiction over Ahuja comports with due process. *See Carefirst*, 334 F.3d at 396–97.

"The Due Process clause permits the exercise of specific personal jurisdiction over a defendant if 'the defendant [has] purposefully established minimum contacts in the forum State such that it should reasonably anticipate being haled into court there.'" *Fidrych*, 952 F.3d at 138 (quoting *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 195, 189 (4th Cir. 2016)). When determining whether a defendant should reasonably anticipate being haled into court in a jurisdiction, courts consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of

conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Becker v. Noe*, No. ELH-18-931, 2019 WL 1415483, at \*27 (D. Md. Mar. 27, 2019) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)). The ultimate burden is on the plaintiff to prove the existence of personal jurisdiction by a preponderance of the evidence. *Id.* at \*7 (citing *Carefirst*, 334 F.3d at 396).

SciRegs alleges Ahuja "acting on behalf of Identi, IdentiR[x], Flatwing[,] and Estreno, intentionally and with the intent to deceive SciRegs solicited and requested that SciRegs provide consulting services to [the defendant-companies] with no intention of paying for the services provided." ECF 1, ¶ 49. This single allegation is the basis for the fraudulent misrepresentation claim against Ahuja. SciRegs does not plead when, to whom, how, or from where Ahuja communicated the solicitations or requests for services. SciRegs merely alleges Ahuja is a member or managing member of the contracting companies and a Florida resident who transacts business in Maryland. In contrast, Ahuja filed a declaration stating that "[a]ll of [his] interactions with SciRegs have been conducted from outside of the state of Maryland, and have been through, on behalf of, and as a representative of one or more of the companies of which [he is] a member or principal." ECF 10-2, ¶ 5. He also declares he "[has] never conducted nor transacted any business in [his] personal name or in his personal capacity in the State of Maryland." *Id.* ¶ 4.

In *Columbia Briargate Co. v. First National Bank in Dallas*, 713 F.2d 1052 (4th Cir. 1983), the Fourth Circuit addressed when a corporate agent, like Ahuja, is subject to personal jurisdiction in a forum by reason of the agent's commission of a tort in connection with the corporation:

> [W]hen a non-resident corporate agent is sued for a tort committed by him in his corporate capacity in the forum state in which service is made upon him without the forum under the applicable state long-arm statute as authorized by Rule 4(e), he is properly subject to the jurisdiction of the forum court, *provided the long-arm*

> *statute of the forum state is co-extensive with the full reach of due process*.  On the
> other hand, if the claim against the corporate agent rests on nothing more than that
> he is an officer or employee of the non-resident corporation and if any connection
> he had with the commission of the tort occurred without the forum state, . . . under
> sound due process principles, the nexus between the corporate agent and the forum
> state is too tenuous to support jurisdiction over the agent personally by reason of
> service under the long-arm statute of the forum state.

713 F.2d at 1064–65 (emphasis in original).  Since *Columbia Briargate*, this Court has dismissed claims against corporate agents who committed torts outside Maryland where plaintiffs attempted to establish personal jurisdiction solely based on the fact that the agents were officers or employees of a non-resident corporation.  *See, e.g.*, *Coffin v. TGM Assocs. LP*, No. SAG-20-3120, 2021 WL 1238560, at *4–5 (D. Md. Apr. 2, 2021) (dismissing claims against corporate agents because "the Complaint [was] devoid of specific, non-conclusory allegations that the [defendants] *individually*" established contacts with Maryland); *Harte-Hanks Direct Mktg./Balt., Inc. v. Varilease Tech. Fin. Grp.*, 299 F. Supp. 2d 505, 513–15 (D. Md. 2004) (dismissing fraud claims against a corporate officer in part because the officer's contacts with Maryland were based solely on his status as an officer of the defendant corporation, not on his contacts with the state in his personal capacity).

After a review of the pleadings and Ahuja's declaration, the Court concludes that the fraud claim against Ahuja "rests on nothing more than that he is an officer . . . of the non-resident corporation[s]" and that "any connection [Ahuja] had with the commission of the [alleged fraud] occurred" outside of Maryland.  *See Columbia Briargate*, 713 F.2d at 1064.  Therefore, the Court must conclude that the nexus between Ahuja and Maryland "is too tenuous to support jurisdiction over" him.  *Id*. at 1064–65. SciRegs has failed to plead facts giving rise to this Court's personal jurisdiction over Ahuja.  Accordingly, Count V is dismissed for lack of personal jurisdiction.

**IV.     Conclusion**

SciRegs has not adequately pled a breach of contract claim against the non-signatory defendant-companies, IdentiRx and Estreno.  Consequently, the Court dismisses without prejudice the breach of contract claims against them.  SciRegs also has not pled facts plausibly demonstrating this Court's personal jurisdiction over Ahuja.  Count V is dismissed without prejudice.


Date: June 13, 2022

_____
Deborah L. Boardman
United States District Judge